*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1106**

State of Minnesota,
Respondent,

vs.

Jordan Gregory Richardson,
Appellant.

**Filed April 29, 2024**
**Affirmed**
**Larson, Judge**

Lincoln County District Court
File No. 41-CR-21-181

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Glen Alan Petersen, Lincoln County Attorney, Tyler, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Eva F. Wailes, Assistant Public
Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

**NONPRECEDENTIAL OPINION**

**LARSON**, Judge

Appellant Jordan Gregory Richardson appeals from a district court order revoking
his probation. Because we conclude the district court did not abuse its discretion when it
revoked Richardson's probation, we affirm.

## FACTS

In November 2021, respondent State of Minnesota charged Richardson with multiple counts related to the possession of controlled substances and controlled-substance paraphernalia. The state and Richardson entered into a plea agreement whereby Richardson agreed to plead guilty to second-degree possession of a controlled substance pursuant to Minn. Stat. § 152.022, subd. 2(a)(1) (2020), and in return the state would dismiss the remaining charges and support Richardson's request for a downward dispositional departure—a stayed prison sentence and probation for five years.

Richardson pleaded guilty on August 18, 2022. Prior to sentencing, Richardson voluntarily enrolled in the Southwest Community Adult Treatment Court Program (the program) and entered inpatient treatment. The district court held a sentencing hearing on September 29, 2022, and granted Richardson's motion for a downward dispositional departure. The district court sentenced Richardson to a stayed 68-month prison term and placed him on probation for five years. The district court imposed several probation conditions, including that Richardson complete the program, abstain from alcohol and controlled substances, submit to random testing, and remain law abiding.

In early October 2022, Richardson transitioned from inpatient to outpatient treatment. He continued to attend the program. During this time, the treatment court repeatedly sanctioned Richardson for failure to comply with the program rules. Richardson's sanctions included verbal warnings, community work service, and jail time.

In late March 2023, Richardson was arrested for violating the program rules when he stayed out past curfew and consumed several alcoholic beverages. The treatment court

sanctioned Richardson by imposing jail time, requiring additional in-person meetings with program staff, revoking a travel request, and resetting Richardson's progress in the program.

Just over a week later, Richardson appeared in treatment court to discuss a second arrest. This arrest resulted from a law-enforcement investigation that revealed text messages between a woman and Richardson regarding the sale of controlled substances to others. The treatment court informed Richardson that: (1) program staff had recommended that the treatment court terminate Richardson from the program; (2) he had a right to an attorney; and (3) he had a right to a hearing regarding his termination from the program. Richardson asked to speak with an attorney, and the treatment court set a termination hearing for two days later.

At the termination hearing, Richardson accepted that there was sufficient evidence for termination, but asked the treatment court for another opportunity to complete the program. The treatment court was unconvinced, observing that it had sanctioned Richardson nearly every week, but the sanctions had been ineffective. The treatment court also stated that Richardson had been dishonest with the treatment court virtually the entire time he had been in the program. For these reasons, the treatment court terminated Richardson from the program.

The next day, Richardson's probation officer filed a probation-violation report with the district court, alleging Richardson violated his probation when he failed to complete the program. The report recommended the district court execute Richardson's 68-month prison term.

The district court held a probation-revocation hearing on May 2, 2023, where Richardson admitted to the alleged violation. At the hearing, the prosecutor agreed with the probation officer's recommendation. The district court revoked Richardson's probation and issued a written order on May 11, 2023.

Richardson appeals.[1]

**DECISION**

Richardson challenges the district court's decision to revoke his probation. "[R]evocation should be used only as a last resort when treatment has failed." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). District courts have "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of discretion." *Id.* at 249-50. We review de novo whether the district court made the required findings to revoke probation. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

A district court must analyze three factors before it revokes probation (the *Austin* factors). *Id.* at 606. The district court must: (1) "designate the specific [probation] condition or conditions that were violated"; (2) "find that the violation was intentional or inexcusable"; and (3) "find that the need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250. When analyzing the *Austin* factors, a district court is "not charged with merely conforming to procedural requirements; rather, [it] must seek

---

[1] The state did not file a brief in this case. Pursuant to Minn. R. Civ. P. 142.03, "the case shall be determined on the merits."

4

to convey [its] substantive reasons for revocation and the evidence relied upon." *Modtland*, 695 N.W.2d at 608.

Here, Richardson only challenges the district court's application of the third *Austin* factor. When determining the third *Austin* factor, district courts should consider three subfactors (the *Modtland* subfactors): (1) whether "confinement is necessary to protect the public from further criminal activity"; (2) if "the offender is in need of correctional treatment which can most effectively be provided if he is confined"; or (3) whether "it would unduly depreciate the seriousness of the violation if probation were not revoked." *Id.* at 607 (quoting *Austin*, 295 N.W.2d at 251). "Only one *Modtland* subfactor is necessary to support revocation." *State v. Smith*, 994 N.W.2d 317, 320 (Minn. App. 2023), *rev. denied* (Minn. Sept. 27, 2023).

Richardson first argues the district court failed to make adequate findings under the third *Austin* factor because it "failed to provide any justification or substantive analysis as to why the 'need for confinement outweighs the policies favoring probation.'" We disagree.

In its written order, the district court applied the third *Modtland* subfactor and found "[t]hat it would unduly depreciate the seriousness" of Richardson's probation violation if the district court did not revoke probation because: (1) Richardson was on probation for a controlled-substance crime; (2) Richardson "was given a downward dispositional departure"; (3) Richardson knew he needed to comply with his probation conditions; (4) the treatment court sanctioned Richardson 12 times for failing to comply with the program rules; (5) the treatment court imposed intermediate sanctions that failed to bring

Richardson into compliance; and (6) Richardson's violations of the program rules included selling controlled substances and consuming alcohol. Based on these findings, the district court determined that the need for Richardson's confinement outweighed the policies favoring probation. We conclude the district court made adequate findings with respect to the third *Austin* factor, and we discern no abuse of discretion in its decision that the third *Austin* factor supported revoking probation.

Richardson alternatively argues that, even if the district court properly articulated its reasoning, the district court still abused its discretion when it revoked probation because other intermediate sanctions were available to the district court. We are not persuaded.

The district court placed Richardson on probation and allowed him to enter the program after the state brought significant controlled-substances related charges against him. The treatment court subsequently terminated Richardson from the program after imposing numerous intermediate sanctions to try to bring Richardson into compliance. The record indicates that Richardson continually failed to comply with the program rules despite the treatment court's repeated attempts to impress upon him the importance of compliance. Given this record, we conclude the district court did not abuse its discretion when it revoked probation rather than impose an intermediate sanction.

**Affirmed.**